UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA SIGRIST,<br><br>Plaintiff,<br><br>v.<br><br>PROGENICS PHARMACEUTICALS, INC., ANN MACDOUGALL, GÉRARD BER, BRADLEY L. CAMPBELL, ERIC J. ENDE, KAREN JEAN FERRANTE, HEINZ MÄUSLI, and DAVID W. MIMS,<br><br>Defendants. | Case No.______________<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Joshua Sigrist ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Progenics Pharmaceuticals, Inc. ("Progenics" or the "Company") and the members of Progenics' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Progenics will be acquired by Lantheus Holdings, Inc. ("Lantheus") through Lantheus' wholly owned subsidiary Plato Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On February 20, 2020, Progenics and Lantheus issued a joint press release announcing they had entered into an amended Agreement and Plan of Merger dated February 20, 2020 (the "Merger Agreement") pursuant to which Lantheus will acquire Progenics. Under the terms of the Merger Agreement each Progenics stockholder will receive, for each share of Progenics stock they own, (i) 0.31 of a share of Lantheus common stock, and (ii) one contingent value right ("CVR") representing the right to receive such stockholder's pro rata share of aggregate cash payments equal to 40% of U.S. net sales generated by PyL™ ($^{18}$F-DCFPyL)[1] in calendar years 2022 and 2023 in excess of $100 million and $150 million, respectively (the "Merger Consideration").

3. On March 19, 2020, Progenics filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Progenics stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company management's financial projections for Progenics and Lantheus; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, BofA Securities, Inc. ("BofA Securities"); and (iii) BofA Securities' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Progenics stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Progenics' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material

---

[1] PyL™ ($^{18}$F-DCFPyL) is Progenics' prostate-specific membrane antigen targeted imaging agent designed to visualize prostate cancer currently in late stage clinical development.

information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Progenics is headquartered in this District and defendants are found or are inhabitants or transact business in this District. Moreover, Progenics' principal executive offices are located in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Progenics.

9. Defendant Progenics is incorporated in Delaware, with principal executive offices located at One World Trade Center, 47th Floor, New York, New York 10007. Progenics is an oncology company focused on the development and commercialization of innovative targeted

medicines and artificial intelligence to find, fight and follow cancer. Progenics' common stock is traded on the Nasdaq Global Select Market under the ticker symbol "PGNX."

10. Defendant Ann MacDougall ("MacDougall") serves as Interim Chair of the Board and has been a director of the Company since November 2019.

11. Defendant Gérard Ber ("Ber") has been a director of the Company since November 2019.

12. Defendant Bradley L. Campbell ("Campbell") has been a director of the Company since 2016.

13. Defendant Eric J. Ende ("Ende") has been a director of the Company since November 2019.

14. Defendant Karen Jean Ferrante ("Ferrante") has been a director of the Company since January 2014.

15. Defendant Heinz Mäusli ("Mäusli") has been a director of the Company since November 2019.

16. Defendant David W. Mims ("Mims") has been a director of the Company since November 2019.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Lantheus is global leader in the development, manufacture and commercialization of innovative diagnostic medical imaging agents and products that assist clinicians in the diagnosis and treatment of cardiovascular and other diseases. Clinicians use Lantheus' imaging agents and products across a range of imaging modalities, including echocardiography and nuclear imaging.

Lantheus' commercial products are used by cardiologists, nuclear physicians, radiologists, internal medicine physicians, technologists and sonographers working in a variety of clinical settings. Lantheus sells its products to radiopharmacies, integrated delivery networks, hospitals, clinics and group practices. Lantheus operates in the U.S. and internationally. Lantheus' shares trade on the NASDAQ Global Select Market under the ticker symbol "LNTH."

19. Merger Sub is a Delaware corporation and a direct wholly owned subsidiary of Lantheus.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Progenics is an oncology company focused on the development and commercialization of innovative targeted medicines and artificial intelligence to find, fight and follow cancer, including: therapeutic agents designed to treat cancer (AZEDRA®, 1095, and PSMA TTC); prostate-specific membrane antigen ("PSMA") targeted imaging agents for prostate cancer (PyL™ and 1404); and imaging analysis technology (aBSI and PSMA AI). Progenics has two commercial products: AZEDRA, for the treatment of patients with unresectable, locally advanced or metastatic pheochromocytoma or paraganglioma (rare neuroendocrine tumors of neural crest origin) who require systemic anticancer therapy; and oral and subcutaneous formulations of RELISTOR® (methylnaltrexone bromide) for the treatment of opioid-induced constipation, which are partnered with Bausch Health Companies Inc.

21. On March 13, 2020, the Company reported its fourth quarter and full year 2019 financial results. Fourth quarter 2019 revenue totaled $15.1 million, up from $3.2 million in the fourth quarter of 2018. Full-year 2019 revenue totaled $35.0 million, up from $15.6 million for the full-year 2018. Net loss attributable to the fourth quarter was $11.3 million or $0.13 per diluted

share, compared to a net loss of $14.7 million or $0.17 per diluted share in the corresponding 2018 period. Defendant Mims commented on the results, stating, "[t]he recent positive top line results from the Phase 3 CONDOR trial of PyL™ highlights the potential of our radiopharmaceutical pipeline."

**The Proposed Transaction**

22. On February 20, 2020, Progenics and Lantheus issued a joint press release announcing the amended terms of the Proposed Transaction, which states, in relevant part:

> NORTH BILLERICA, Mass. & NEW YORK--Lantheus Holdings, Inc. (NASDAQ: LNTH) ("Lantheus"), parent company of Lantheus Medical Imaging, Inc. ("LMI"), a leader in the development, manufacture and commercialization of innovative diagnostic imaging agents and products, and Progenics Pharmaceuticals, Inc. (NASDAQ: PGNX) ("Progenics"), an oncology company developing innovative medicines and artificial intelligence to find, fight and follow cancer, today announced that they have entered into an Amended and Restated Agreement and Plan of Merger (the "Amended Agreement") which amends the previously announced definitive Agreement and Plan of Merger dated as of October 1, 2019 (the "Original Agreement"). The Amended Agreement has been unanimously approved by the Boards of Directors of both companies.
>
> Under the terms of the Amended Agreement, Lantheus will acquire all of the issued and outstanding shares of Progenics common stock at a fixed exchange ratio whereby Progenics stockholders will receive, for each share of Progenics stock held at the time of the closing of the merger, 0.31 of a share of Lantheus common stock, increased from 0.2502 under the Original Agreement, together with a non-tradeable contingent value right ("CVR"). The CVR is payable in two separate cash payments if PyLTM (18F-DCFPyL), Progenics' prostate-specific membrane antigen targeted imaging agent designed to visualize prostate cancer currently in late stage clinical development ("PyL"), exceeds net sales thresholds of $100 million in 2022 and $150 million in 2023. As a result of the increase in the exchange ratio, following the completion of the merger, former Progenics stockholders' aggregate ownership stake will increase to approximately 40% of the combined company from approximately 35% under the terms set forth in the Original Agreement.
>
> Mary Anne Heino, President and Chief Executive Officer of Lantheus, said, "After continued integration planning with Progenics and close collaboration with Progenics' reconstituted Board of Directors, we are even more excited about the potential value we can unlock by combining our two businesses. We remain confident that together, we will create a platform that leverages Lantheus' long-standing expertise in complex manufacturing, supply chain and commercial

excellence, with Progenics' three leading FDA approved products, clinical pipeline and development capabilities. Our team enthusiastically shares the view of Progenics stockholders in the long-term growth potential of the Progenics product portfolio and, with our complementary strengths, our combined company will be better able to serve patients and healthcare professionals across the continuum of critical diagnosis and care. We are also pleased with the progress the two companies have made toward closing throughout our discussions."

Gérard Ber, Ph.D. and Mr. Heinz Mäusli, two members of Progenics' reconstituted Board, will join the Lantheus Board upon closing. Lantheus will reduce its current ten member Board to nine members at its 2020 stockholders meeting, or sooner if this transaction closes before then. Lantheus will further reduce its Board to eight members at its 2021 stockholders meeting. As previously announced, the combined company will be led by Lantheus Chief Executive Officer Mary Anne Heino, who will be supported by Chief Financial Officer Robert J. Marshall Jr., CFA, and Chief Operations Officer John Bolla.

Brian Markison, Chairman of the Board of Lantheus, said, "We are excited about the additions of Dr. Ber and Mr. Mäusli to our board. Both Dr. Ber and Mr. Mäusli add experience in radiopharmaceuticals with deep manufacturing, operating, finance and compliance experience."

Ann MacDougall, Interim Chair of Progenics' Board, said, "We have been pleased to work with Lantheus on the amended merger agreement. The Progenics' Board has unanimously determined that the combination with Lantheus under the updated terms is in the best interest of our stockholders. The merger creates a stronger combined platform that offers an innovative and diversified diagnostic and therapeutics portfolio while ensuring stockholders the opportunity to participate in the future potential upside through enhanced ownership and the CVRs. The reconstituted Progenics Board, assisted by independent financial and legal advisors, has evaluated the business prospects and operations of Progenics as a stand-alone business as well as the value of the Progenics interest in the combined company under the revised terms in the merger transaction, and have concluded that the combination is the better path forward. We are also pleased to have our directors, Dr. Gérard Ber and Mr. Heinz Mäusli, join the Board of the combined company to enhance its prospects for future success."

David Mims, Interim CEO of Progenics, added, "We believe the combination will add significant value to both companies' stockholders, especially in light of the recent positive results we achieved with our PyL Phase 3 CONDOR trial and our product pipeline and research and development capabilities."

**Insiders' Interests in the Proposed Transaction**

23. Progenics insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Progenics.

24. Notably, certain Company insiders will secure positions for themselves with the combined company. For example, the Merger Agreement provides that defendants Ber and Mäusli will serve on the Lantheus Board following completion of the Proposed Transaction.

25. Moreover, if they are terminated in connection with the Proposed Transaction, Progenics' named executive officers stand to receive substantial cash severance payments in the form of Golden Parachute compensation as set forth in the following table:

| Named Executive Officer | Cash ($)(1) | Equity ($) (2) | Perquisites/ Benefits ($) | Tax Reimbursement ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|
| David W. Mims | 0 | 800 | 0 | 0 | 0 | 800 |
| Mark R. Baker | 0 | 0 | 0 | 0 | 0 | 0 |
| Patrick Fabbio | 180,000 | 52,231 | 0 | 0 | 0 | 232,231 |
| Benedict Osorio | 180,000 | 52,231 | 0 | 0 | 0 | 232,231 |
| Asha Das | 180,000 | 68,376 | 0 | 0 | 0 | 248,376 |
| Vivien Wong | 180,000 | 52,231 | 0 | 0 | 0 | 232,231 |

**<u>The Proxy Statement Contains Material Misstatements or Omissions</u>**

26. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Progenics' stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

27. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company management's financial projections for Progenics and Lantheus; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor BofA Securities; and (iii) BofA Securities' potential

conflicts of interest.

***Material Omissions Concerning Progenics' Financial Projections***

28. The Proxy Statement omits material information regarding Company management's financial projections for Progenics and Lantheus relied upon by BofA Securities for the analyses underlying its fairness opinion.

29. For example, the Proxy Statement sets forth:

> In connection with rendering its opinion, BofA Securities, among other things:
>
> * * *
>
> - reviewed certain estimates as to the amount and timing of cost savings (collectively, the "Cost Savings") anticipated by the management of Progenics to result from the merger;
>
> - reviewed and discussed with the management of Progenics the estimated net operating loss tax attributes of Progenics and Lantheus Holdings prepared by the management of Progenics (collectively, the "NOLs");
>
> * * *
>
> - reviewed the potential pro forma financial impact of the merger on the future financial performance of Lantheus Holdings, including the potential effect on Lantheus Holdings' estimated adjusted earnings per share;

*Id.* at 149 (emphasis added). The Proxy Statement, however, fails to disclose (i) Progenics management's estimates as to the amount and timing of cost savings (the "Cost Savings"); (ii) Progenics management's estimated net operating loss tax attributes ("NOLs") of Progenics and Lantheus; and (iii) the potential effect of the Proposed Transaction on Lantheus' estimated adjusted earnings per share.

30. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Progenics' Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning BofA Securities' Financial Analyses***

31. The Proxy Statement describes BofA Securities' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of BofA Securities' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Progenics' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Securities' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

32. With respect to BofA Securities' *Discounted Cash Flow Analysis* of Progenics, the Proxy Statement fails to disclose: (i) the line items underlying Progenics' stand-alone, unlevered, after-tax free cash flows for the fiscal years ending December 31, 2020 through December 31, 2033; (ii) Progenics' terminal year stand-alone, unlevered, after-tax normalized free cash flow, utilized to derive the terminal value; (iii) the estimated terminal value of the Company; (iv) quantification of the inputs and assumptions underlying the discount rate range of 10.50% to 14.00%; and (v) the estimated present value of the NOLs that Progenics management forecasted would be utilized during calendar years 2019 through 2033 (with and without change of control limitations on Progenics NOL carryforwards per section 382 of the Internal Revenue Code).

33. With respect to BofA Securities' *Discounted Cash Flow Analysis* of Lantheus, the Proxy Statement fails to disclose: (i) the line items underlying Lantheus' stand-alone, unlevered, after-tax free cash flows for the fiscal years ending December 31, 2020 through December 31, 2024; (ii) Lantheus' terminal year stand-alone, unlevered, after-tax normalized free cash flow, utilized to derive the terminal value; (iii) the estimated terminal value of Lantheus; (iv) quantification of the inputs and assumptions underlying the discount rate ranges of 7.75% to

10.00% and 5.00% to 7.00%; and (v) the estimated present value of the NOLs that Progenics management forecasted would be utilized during calendar years 2019 through 2024.

34. With respect to BofA Securities' *Selected Publicly Traded Companies Analysis* of Progenics and Lantheus, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by BofA Securities; and (ii) the calendar year 2021 and 2022 revenue for Progenics and Lantheus, utilized by BofA Securities in its analyses.

35. With respect to BofA Securities' *Implied Exchange Ratio Analysis - Selected Companies Analysis* of Progenics and Lantheus, the Proxy Statement fails to disclose BofA Securities' calculation of the implied probability-adjusted present value of CVR payouts as well as Progenics management's estimates as to the probability and timing of achieving the CVR net sales thresholds underlying BofA Securities' calculation.

36. With respect to BofA Securities' *Has/Gets Analysis*, the Proxy Statement fails to disclose: (i) the estimated after-tax Cost Savings (net of after-tax costs to achieve such Cost Savings) during the fiscal year ending December 31, 2020 through the fiscal year ending December 31, 2024; (ii) the normalized after-tax Cost Savings in the terminal year, utilized to derive the terminal value; (iii) the estimated terminal value of the Cost Savings; (iv) the combined NOL carryforwards of Progenics (with change of control limitations) and Lantheus on a pro forma basis; (v) the probability-adjusted present value of CVR payouts; and (vi) quantification of the inputs and assumptions underlying the discount rate ranges of 10.50% to 14.00% and 5.00% to 7.00%.

37. With respect to BofA Securities' analysis of price targets, the Proxy Statement fails to disclose: (i) the price targets observed by BofA Securities in the analysis; and (ii) the sources thereof.

38. The omission of this information renders the statements in the "Opinion of Progenics' Financial Advisor" and "Certain Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning BofA Securities' Potential Conflicts of Interest***

39. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by BofA Securities.

40. The Proxy Statement sets forth:

> BofA Securities and its affiliates in the past have provided, currently are providing, and in the future may provide, investment banking, commercial banking and other financial services to Lantheus Holdings and certain of its affiliates and have received or in the future may receive compensation for the rendering of these services, ***including having provided or providing certain treasury management products and services to Lantheus Holdings and certain of its affiliates***. From February 1, 2018 through January 31, 2020, BofA Securities and its affiliates derived aggregate revenues from Lantheus Holdings and certain of its affiliates of less than $1 million ***for investment and corporate banking services***.

*Id.* at 157 (emphasis added). The Proxy Statement, however, fails to disclose the amount of aggregate revenues BofA Securities received from Lantheus for providing certain treasury management products and services.

41. Moreover, the Proxy Statement fails to disclose whether BofA Securities has provided any services for the Company in the past two years, and if so, the compensation BofA Securities received in connection with such services.

42. The omission of this material information renders the statements in the "Opinion of Progenics' Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this

information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Progenics stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Company management's financial projections for Progenics and Lantheus, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor BofA Securities, and BofA Securities' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Progenics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Progenics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Progenics stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Progenics, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Progenics stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 3, 2020

**WEISSLAW LLP**

By ______________________

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*